C-05-165

Civil No. _____

United States Courts
Southern District of Texas
FILED

APR - 4 2005

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DICTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION


MICHAEL RONJE -- Petitioner,

V.

UNITED STATES OF AMERICA -- Respondent


MOTION TO VACATE AND CORRECT SENTENCE

PURSUANT TO 28 U.S.C. §2255


Michael Ronje

#31910-013

USP PO BOX 019001

Atwater, CA 95301

Petitioner pro se

AO 243 (Rev. 5/85)

**MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| United States District Court | District SOUTHERN District of TEXAS | |
|---|---|---|
| Name of Movant Michael Ronje | Prisoner No. 31910 - 013 | Case No. CR-C-03-00159-05 |
| Place of Confinement U.S. Penitentiary Atwater, Calif. | | United States Courts Southern District of Texas FILED |

UNITED STATES OF AMERICA    v.   Michael Ronje

APR – 4 2005

(name under which ~~Michael N. Milby~~ Michael N. Milby, Clerk of Court)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack the United States District Court for the Southern District of Texas, Corpus Christi Division

2. Date of judgment of conviction N/A

3. Length of sentence 235 months

4. Nature of offense involved (all counts) 18 USC § 1111 / 18 USC § 1112 ; 18 USC § 2 aiding and abetting murder

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   N/A

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐       N/A
   (b) Judge only ☐

7. Did you testify at the trial?       N/A
   Yes ☐ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☐ No ☒

AO 243 (Rev. 5/85)

9. If you did appeal, answer the following:     N|A

(a) Name of court_____

(b) Result _____

(c) Date of result _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No ☒

11. If your answer to 10 was "yes," give the following information:     N|A

(a) (1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised_____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result_____

(6) Date of result _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised_____

_____

_____

_____

_____

(4)  Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5)  Result_____

(6)  Date of result _____

(c)  Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1)  First petition, etc.          Yes ☐ No ☐
(2)  Second petition, etc.     Yes ☐ No ☐

(d)  If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all ground in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.
Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.
(a)  Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
(b)  Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: _Petitioner's sentence was unlawfully enhanced._

Supporting FACTS (state briefly without citing cases or law) _See attached_

B. Ground two: _The evidence was insufficient to support a conviction for murder - mens rea element missing_

Supporting FACTS (state briefly without citing cases or law): _See attached_

C. Ground three: _____

Supporting FACTS (state briefly without citing cases or law): _____

(5)

_____

_____

D.   Ground four: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

13.   If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

 All grounds were not presented in a Direct Appeal or Post-Conviction
because my attorney told me I could not appeal anything.

_____

_____

14.   Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐   No ☒

15.   Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing  Jeannette Mercado — 5811 Texas bar # 13942900
PO Box 714, Alice, Texas 78333

(b) At arraignment and plea _____ (same)

(c) At trial _____ (same)

(d) At sentencing _____ (same)

(e) On appeal __No appeal filed__

(f) In any post-conviction proceeding __nothing filed__

(g) On appeal from any adverse ruling in a post-conviction proceeding __N/A__

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☐ No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

__2-4-05__
(date)

2-4-05

_Mike Roqje_
Signature of Movant

(7)

Civil No. _____


IN THE UNITED STATES DICTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION


MICHAEL RONJE -- Petitioner,

V.

UNITED STATES OF AMERICA -- Respondent


BRIEF IN SUPPORT OF MOTION

TO VACATE AND CORRECT SENTENCE

PURSUANT TO 28 U.S.C. §2255

TABLE OF CONTENTS

TABLE OF AUTHORITIES                    i

INTRODUCTION                            1

STATEMENT OF JURISDICTION               3

STATEMENT OF THE CASE                   3

STATEMENT OF THE ISSUE                  3

STANDARDS FOR DECISION                  3

TIME LIMITS FOR INITIAL MOTION          4

SUMMARY OF THE ARGUMENT                 5

ARGUMENT AND AUTHORITIES                6

CONCLUSION                              25

CERTIFICATE OF SERVICE                  27

TABLE OF AUTHORITIES

1. APPRENDI V. NEW JERSEY, 530 U.S 466, 490 (2000)    passim

2. ARIZONA V. FULMINATE, 499 U.S. 279 (1991)          9

3. ASHLEY V. U.S., 266 F.3d 674 (7th Cir. 2001)       15

4. BLAKELY V. WASHINGTON, 2004 WL 1402697 (6-24-04)   passim

5. CAGE V. LOUISIANA, 498 U,S, 39 (1990)              12

6. DARITY V. U. S. 124 F.SUPP.2d 355 (W.D.N.C. 2000)  11

7. DRETKE V. HALEY, No. 02-1824 (May 3, 2004)         19

8. GIBSON V. U. S., 271 F.3d (6th Cir. 2001)          14

9. GRAHAM V. COLLINS, 506 U.S. 461, 468 (1993)        23

10. HOFFMAN V. RAVE, 236 F.3d 523 (9th Cir. 2001)     11

11. IVON V. CITY OF NEW YORK, 407 U.S. 203 (1972)     6

12. JACKSON V. U.S. 2000 WL 1855102 (E.D. MI)         17

13. JONES V. U.S. 526 U.S. 227 (1999)                        passim

14. MURRAY V. CARRIER, 477 U.S. 478, 496 (1986)             19

15. O'BRIEN V. DEBOIS, 145 F.3d 16 (1st Cir. 1998)          15

16. PADILLA-DURAN V. U.S., Case No. 92 CR 58 (S.D. CA.)     15

17. PENRY V. LYNAUGH, 492 U.S. 302 (1989)                   21

18. PEOPLE V. BEACHEM, No. 1-99-0852 (Ill.Ct.Ap 12-6-00)    12

19. REED V. ROSS, 468 U.S. 1 (1984)                         9

20. RING V. ARIZONA, 536 U.S. 584 (2002)                    22

21. RIVERS V. ROADWAY EXPRESS, 114 S.Ct. 1510 (1994)        24

22. RODGERS V. U.S., 229 F.3d 704 (8th Cir. 2000)           15

23. SAFFLE V. PARKS, 494 U.S. 495 (1990)                    10,21

24. SAWYER V. SMITH, 497 U.S. 227 (1990)                    10

25. SAWYER V. WHITELY, 505 U.S. 333 (1992)                  19

26. SCHIRO V. SUMMERLIN #03526 '04 WL 1402732 (6-24-04)     22

27. SULLIVAN V. LOUISIANA, 508 U.S. 275, (1993)             11,24

28. TEAGUE V. LANE, 489 U.S. 288 (1989)                     9,21

29. TYLER V. CAIN, 533 U.S. 656 (2001)                      21

30. IN RE WINSHIP, 397 U.S. 358 (1970)                      passim

31. U.S. V. BLY, CR-96-108 (W.D. OK, 2001)                  15

32. U.S. V. BOOKER #04-104 2005 WL 50108 (1-12-05)          passim

33. U.S. V. FRADY, 456 U.S. 152 (1982)                      9, 20

34. U.S. V. HICKMAN 151 F.3d 446 (5th Cir. 1998)            26

35. U.S. V. HUGHES, 4th Cir. No. 03-4172, 1-24-05           8

36. U.S. V. MURPHY 109 F.Supp.2d 1059 (D.Minn. 2000)        12

37. U.S. V. PITTMAN 120 F.Supp.2d 1263 (D.OR. 2000)         12

38. U.S. V. RAMIREZ, 242 F.3d 348 (6th Cir. 2001)           14

39. U.S. V. SWINTON, 333 F.3d 481 (3d Cir. 2003)            23

INTRODUCTION AND PROCEDURAL HISTORY

Petitioner was charged in the Southern District of
Texas in the murder of Mr. Urdiales.  He pled guilty and, on
September 26, 2003, Mr. Ronje was sentenced to 235 months
imprisonment.  [NOTE: Without access to more court documents
Petitioner is severely limited in addressing the procedural
history and other matters related to this case and these
proceedings at this time.  Petitioner is still waiting for
transcripts and other documents that he requested from the
district court and his attorney but, to date, all he has
received is a copy of (a) Trial Counsel's Objections to Pre-
Sentence Report and (b) the Government's Memorandum of Plea
Agreement]

Petitioner, his co-defendants and the victim were all
at one time part of the same prison gang.  The victim was to
have bailed out of jail certain individuals arrested for drug
trafficking, but he did not do so.  That was "a violation"
under the gang "code" punishable by a severe beating; and
further, anyone who resisted would be similarly punished.

Mr. Ronje had been awakened by his roommate, Mr.
Reyes, and ordered to get into a pickup truck.  He did not
know why or who would be in the truck, least of all Mr.
Urdiales.  Urdiales had already been beaten, was bloodied and
his pickup (which later was determined not being his but was
reported stolen) had been taken from him.

They took Urdiales to the National Seashore.  Mr.
Ronje admitted to having hit the victim while in the truck

1

and at the beach but he denied stabbing or doing anything to cause the man's death.  Mr. Ronje never thought that death would be the punishment for the man not having bailed out of jail his associates.

Others killed Mr. Urdiales out of Petitioner's view.  All he knew was that he was ordered to take a trash bag of clothing to the water and release it so that the water would carry it away.

Soon after his arrest, Mr. Ronje sought to take a polygraph examaination; however, the Government refused unless he entered a guilty plea first.  On advise of Counsel, Mr. Ronje pled guilty.  He was then examined by an FBI polygraph expert who determined that Mr. Ronje was telling the truth when he was asked and answered that (1) he did not stab the victim; (2) he did not witness the murder; (3) he arrived at the end of the criminal venture; and (4) he was not envolved in any degree of planning or preparation for the killing of the victim.  It must be noted that Mr. Ronje had not been given any adjustment for roll in the offense as he was a minimal participant and "plainly among the least culpable of those involved in the conduct of the group."  A presentence report ("PSR") was prepared.  The report calculated the Base Offense Level and added an enhancement for "abduction or unlawful restraint" of the victim.  Counsel filed objections to the PSR.  The sentencing court increased Mr. Ronje's sentence over the objections based on enhancements that were not decided beyond reasonable doubt. Case law has recently passed down from the U.S. Supreme Court

1

that indicates that was error demanding that Mr. Ronje be
resentenced based solely on his guilty plea.


## JURISDICTION

This petition is brought pursuant to 28 U.S.C. §2255.


## STATEMENT OF THE CASE

Mr. Ronje was charged in the murder of Mr. Urdiales.
On September 26, 2003, Mr. Ronje was sentenced to 215 months
imprisonment based on his guilty plea to Second Degree Murder
and an enhancement that added two levels found at sentencing.


## STATEMENT OF THE ISSUE

DO THE UNITED STATES SUPREME COURT'S DECISIONS IN
BOOKER, IN RE WINSHIP and BLAKELY REVEAL THAT PETITIONER'S
CONSTITUTIONAL RIGHTS WERE SERIOUSLY VIOLATED, CALLING FOR
RESENTENCING, WHEN, DUE TO COUNSEL'S INEFFECTIVENESS AT TRIAL
AND POST-CONVICTION AND THE DISTRICT COURT'S ERROR,
PETITIONER'S SENTENCE WAS INCREASED BASED ON A FACT FOUND BY
A PREPONDERENCE OF THE EVIDENCE?


## STANDARDS FOR DECISION

The scope of review of a federal sentence is
specifically governed by 28 U.S.C. §2255.

A prisoner in custody under sentence of a court
established by Act of Congress claiming the right to be
released upon the ground that the sentence was imposed in

violation of the constitution or laws of the United States,
or that the court was without jurisdiction to impose such a
sentence, or that the sentence was in excess of the maximum
authorized by law, or is otherwise jubject to collateral
attack, may set aside or correct the sentence.

Given the previous language, a party is entitled to
relief whenever sentence was imposed in violation of the
Constitution or the laws of the United States as in the
present case.

## TIME LIMITS TO FILE INITIAL MOTION

Section 2255 states, in pertinent part: "A one-year
period of limitation shall apply to a motion under this
section.  The limitation period shall run from the latest of:
(3) the date on which the the right asserted was initially
recognized by the Supreme Court, if that right has been newly
recognized by the Supreme Court and made retroactively
applicable to cases on collateral review..."  28 U.S.C
§2255(3).

Because this is Mr. Ronje's initial attempt for post-
conviction relief and it comes within weeks of the Supreme
Court's decision in BOOKER and within the one-year limitation
period to raise BLAKELY error -- wherein the Federal
Sentencing Guidelines were held unconstitutional -- it is
timely filed and deserves review.  Further, as will be shown,
infra, BLAKELY and BOOKER do apply on collateral review.

Here, the sentencing court, by a preponderance of the
evidence, somehow found that Mr. Ronje qualified for an

4

enhancement for "abduction or unlawful restraint" of the
victim.  Mr. Ronje's sentence was increased accordingly.

That decision is called into question by the U.S.
Supreme Court's holdings in UNITED STATES V. BOOKER, No. 04-
104, 2005 WL 50108 (January 12, 2005)(BLAKELY applies to the
Federal Sentencing Guidelines); and BLAKELY V. WASHINGTON,
2004 WL 1402697 (June 24, 2004)[dictated by APPRENDI, infra]
and IN RE WINSHIP, 397 U.S. 358, 363 (1970).  These cases
clarify what the Fifth and Sixth Amendments have always
demanded; therefore, they are automatically retroactive and
the Sentencing Reform Act has been unconstitutional from its
inception.

If BLAKELY had announced a procedural rule, the High
Court would have reviewed for harmless error; however, the
reversal without stating a standard of review indicates that
the error was indeed structural and reversal automatic.


SUMMARY OF THE ARGUMENT


Because defendant's sentence was increased based on
facts decided by the sentencing judge and not the jury as
mandated by BLAKELY/APPRENDI, his Fifth and Sixth Amendment
rights to due process and trial by jury were violated; and,
he must be resentenced based on the jury's verdict alone.
Secondly, the evidence produced at trial and sentencing is
not sufficient to allow an enhancement not supported by the
jury's verdict.  Petitioner has been seriously prejudiced in
that he has received a sentence far greater than he would

have absent the BOOKER/ BLAKELY/ APPRENDI/ JONES/ WINSHIP/
CONSTITUTIONAL error and the erroneous enhancement
determination.

## ARGUMENT AND AUTHORITIES

The Supreme Court made clear that "Due Process
protects the accused against conviction except upon proof
beyond a reasonable doubt of every FACT necessary to
constitute the crime with which he is charged". (emphasis
added) IN RE WINSHIP, 397 U.S. 358, 363 (1970).  WINSHIP was
given complete retroactive effect in IVON V. CITY OF NEW
YORK, 407 U.S. 203 (1972) because "the major purpose of the
constitutional standard of proof beyond reasonable doubt
announced in WINSHIP was to overcome an aspect of a criminal
trial that substantially impairs the truth-finding function."

In APPRENDI, the High Court held that "[o]ther than
the fact of a prior conviction, any fact that increases the
penalty for a crime beyond the prescribed statutory maximum
must be submitted to a jury, and proved beyond reasonable
doubt." APPRENDI V. NEW JERSEY, 530 U.S 466, 490 (2000).

The Sixth Amendment application of the reasonable
doubt standard to sentencing factors is a "bedrock" exception
to the TEAGUE bar because it promotes justice and
truthfinding.

BLAKELY makes clear that the phrase "statutory
maximum" as used in APPRENDI does not mean the maximum
possible punishment for the offense under any set of facts
but "the 'statutory maximum' for APPRENDI purposes is the

maximum sentence a judge may impose solely on the basis of
the facts reflected in the jury verdict or admitted by the
defendant." BLAKELY V. WASHINGTON, 2004 WL 1402697 at *4
(June 24, 2004).

### MULTIPLE REASONS EXIST CALLING FOR THE RETROACTIVE APPLICATION OF BLAKELY:

UNDER THE MANIFEST INJUSTICE DOCTRINE BOOKER/
BLAKELY/ APPRENDI APPLY RETROACTIVELY ON HABEAS EVEN HAD
DEFENDANT FAILED TO OBJECT AT SENTENCING AND ON DIRECT

The fundamental precept informing the Supreme Court's
decision in BLAKELY/APPRENDI is that it is patently unjust
for a defendant to be sentenced for a crime of which he has
not been convicted.  See APPRENDI 530 U.S. at 466, 476-78.
Applying the plain error standard of review, and finding
BLAKELY/APPRENDI error, it follows a fortiori that treating
defendant's objection to his sentence as waived would result
in manifest injustice.

Recently the Fourth Circuit remanded a case for
resentencing and held that the imposition of an enhanced
sentence on the basis of judge-found facts violated the
defendant's Sixth Amendment right to jury trial, under
BOOKER, nee BLAKELY and APPRENDI, and satisfies the
discretionary prong of the test for plain error.  Further,
the circuit court reasoned that the error that produced a
sentence greater than that authorized by the jury's finding
affected the defendant's substantial rights.  See U.S. V.

HUGHES, 4th Cir. No. 03-4172 (1-24-05)("To leave standing
this sentence simply because it may happen to fall within the
range of reasonableness unquestionably impugns the fairness,
integrity, or public reputation of judicial proceedings.")
To deny Petitioner here the same relief for the same error
would not only violate his Fifth and Sixth Amendment rights
to Due Process and Trial By Jury but would also violate his
guaranteed right to Equal Protection found in the Fourteenth
Amendment.

     BOOKER applied to the U.S. Sentencing Guidelines the
principle recognized in APPRENDI where the Supreme Court
admonished: "It is unconstitutional for a legislature to
remove from the jury the assessment of facts that increase
the prescribed range of penalties to which a criminal
defendant is exposed."  530 U.S. at 490 (quoting JONES V.
U.S., 526 U.S. 227, 252-253 (1999)(Stevens, J. concurring)).


     BOOKER is an application of BLAKELY which was
dictated by APPRENDI (AND JONES, IN RE WINSHIP, CASE LAW
GOING BACK HUNDREDS OF YEARS AS WELL AS THE FIFTH AND SIXTH
AMENDMENTS) WHICH ANNOUNCED A NEW RULE OF CONSTITUTIONAL
SUBSTANTIVE LAW WHICH IS AUTOMATICALLY RETROACTIVE AND/OR IT
ANNOUNCES A NEW RULE OF CONSTITUTIONAL PROCEDURAL LAW WHICH
FITS INTO THE TEAGUE BAR.


     The remedy in BOOKER, rejecting the mandatory nature
of the Guidelines, and its novel rewriting of the legislation
to make them advisory, is groundbreaking.  Thus, any
procedural error inherent to this case, e.g. that the

8

defendant failed to raise the issue in the trial court, can be excused.  REED V. ROSS, 468 U.S. 1 (1984); U.S. V. FRADY, 456 U.S. 152 (1982).  The BOOKER remedy, the shift from mandatory gidelines to advisory, is substantive in nature and constitutes structural error of a type that prejudice must be presumed and excuses harmlessness analysis.  See ARIZONA V. FULMINATE, 499 U.S. 279 (1991).  TEAGUE does not apply to a substantive claim which is automatically retroactive.  The circumstances here would satisfy the second exeption to TEAGUE anyway.

In BLAKELY, Justice Scalia pointed out, "Our precedents make clear... that the 'statutory maximum' for APPRENDI purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the verdict or admitted by the defendant" and "This case requires us to apply the rule we expressed in Apprendi v. New Jersey." BLAKELY, 2004 LEXIS 4573 at **13-14.


## UNDER THE TEAGUE ANALYSIS


TEAGUE V. LANE, 489 U.S. 288 (1989), requires that a new rule of criminal procedure will not apply retroactively on collateral review unless it both (1) implicates the fundamental fairness of the proceeding; and (2) heightens the accuracy or reliability of the outcome.

TEAGUE and its progeny recognize two exceptions to the general principle that new rules of constitutional procedure not apply retroactively.  The first, not implicated here, is for "rules that place an entire category of primary

conduct beyond the reach of the criminal law." SAWYER V. SMITH, 497 U.S. 227 (1990)(citing TEAGUE, 489 U.S. at 311).

The second exception requires that a new rule be applied retroactively for "those procedures that are implicit in the concept of ordered liberty." TEAGUE, 489 U.S. at 311. As the High Court explained, such rules vindicate two discreet concerns: the fundamental fairness of the uderlying proceeding; and the accuracy of that underlying criminal proceeding. SAFFLE V. PARKS, 494 U.S. 484, 495 (1990). The TEAGUE court explained that it was adapting a rule previously proposed by Justice Harlan: "We believe it desirable to combine the accuracy element of the DESIST version [DESIST V. U.S., 394 U.S. 244, 256-69 (1969)(Harlan, J. dissenting)] of the second exception with the MACKEY requirement [MACKEY V U.S. 401 U.S. 667, 675-702 (Harlan, J. concurring)] that the procedure at issue must implicate fundamental fairness." TEAGUE, 489 U.S. at 312.

Even if the TEAGUE standard applied to the BLAKELY/APPRENDI doctrine, under these circumstances the rule of BLAKELY/APPRENDI would still be retroactively applicable to this case.

BLAKELY/APPRENDI clearly announces a new rule because, by requiring the prosecution to plead in the indictment and prove beyond reasonable doubt any fact, other than a prior conviction, that would increase the penalty for a crime beyond the statutory maximum, BLAKELY/APPRENDI imposes new obligations on the prosecution. Id. at 386. The rule of BLAKELY/APPRENDI would therefore have to fall within one of the two exceptions delineated in TEAGUE if it were to

apply to a collateral attack.

The APPRENDI doctrine meets the second exception: "a watershed change in constitutional law." APPRENDI, 120 S.Ct. at 2380 (O'Connor, J. dissenting). This is because BLAKELY/APPRENDI requires that a reasonable doubt standard apply to any fact, excepting that of a previous conviction, that would increase a crime's penalty. The reasonable doubt standard is a "bed-rock procedural element essential to fairness." DARITY V. U.S. 124 F.SUPP.2d 355 (W.D.N.C. 2000).

In SULLIVAN V. LOUISIANA, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) the Supreme Court held that a jury instruction that relieved the prosecution of the need to prove an offense beyond a reasonable doubt could NEVER be harmless error, and Circuit Courts of Appeals have consistently construed the rule of SULLIVAN as falling within TEAGUE'S second exception to retroactivity. See DARITY, 2000 WL 1804736, AT *2 citing 28 MOORE'S FEDERAL PRACTICE, § 671.09[3][b] (3d Ed. 2000).

Because of the strong parallel between SULLIVAN'S requirement of a reasonable doubt standard and BLAKELY/ APPRENDI'S requirement of the same standard, and because of Justice O'Connor's accurate characterization of the BLAKELY & APPRENDI doctrine(s) as a watershed rule, BLAKELY/ APPRENDI IS A WATERSHED RULE OF CRIMINAL PROCEDURE APPLICABLE TO HABEAS CORPUS PETITIONS. Some earlier decisions have now been proven correct, See e.g. HOFFMAN V. RAVE, 236 F.3d 523, 546-48 (9th Cir. 2001)(Pregerson, J., concurring)(reasoning that the APPRENDI doctrine is a watershed rule); DARITY, 2000 WL 1804736, at *2-3 (citing cases); DOE, 112 F.Supp.2d at 401-

02; U.S. V. MURPHY, 109 F.Supp.2d 1059, 1064 (D.Minn. 2000)(reasoning that the APPRENDI doctrine "is so grounded in fundamental fairness that it may be considered of watershed importance"); PEOPLE V. BEACHEM, No. 1-99-0852, 2000 WL 1677715, at *4-8 (Ill.Ct.App. Dec. 6, 2000).  But see, e.g. U.S. V. PITTMAN, 120 F.Supp.2d 1263, 1269-70 (D.Or. 2000).

Undaunted by the precedents established in SULLIVAN, supra, and WINSHIP, supra, the government still argues that the procedure announced in BLAKELY/APPRENDI merely enhances the reliability of the fact finding process and thus, may not be applied retroactively.  This argument overlooks the Supreme Court precedent concerning the reasonable doubt standard.  SULLIVAN requires that CAGE V. LOUISIANA, 498 U,S, 39 (1990), concerning the constitutionality of a reasonable doubt jury instruction, be applied retroactively to cases on collateral review.

In view of these explanations of TEAGUE'S second exception, the question arises whether the remedy for an unconstitutional reasonable doubt instruction should be applied retroactively.  The answer is found in SULLIVAN'S explanation of the crippling effects of such an instruction: a misdescription of the burden of proof... vitiates all the jury's findings.  Without a jury's constitutional finding of guilt, a conviction lacks both "accuracy" and one of the bedrock procedural elements essential to the fairness of the proceeding.  SULLIVAN also describes denial of a right to a jury verdict of guilt beyond a reasonable doubt as a "structural" error.

In the context of harmless error doctrine, the
Supreme Court has stated that a criminal trial infected by a
structural error cannot reliably serve its function as a
vehicle for determination of guilt or innocence, and no
criminal punishment may be regarded as fundamentally fair.
In light of SULLIVAN, a constitutionally deficient reasonable
doubt instruction not only dilutes the standard of proof
beyond a reasonable doubt mandated by IN RE WINSHIP ("Due
Process protects the accused against conviction except upon
proof beyond a reasonable doubt of every FACT necessary to
constitute the crime with which he is charged") (emphasis
added) but it also prevents a jury verdict of guilty from
coming into existence.  This failure is a breach of the right
to a trial by jury, resulting in a lack of accuracy and the
denial of a bedrock procedural element essential to fairness.
 It is also a structural error that deprives a defendant of a
fundamentally fair trial.  Consequently, the rule that a
constitutionally deficient reasonable doubt instruction
violates the Due Process Clause satisfies TEAGUE'S second
exception.  It should be applied retroactively.  Similarly,
BLAKELY/APPRENDI is retroactively applicable in light of this
indistinguishable precedent.

     Justice O'Connor, in her dissent noted: "Under the
majority's approach, any fact that increases the upper bound
on a judge's sentencing discretion is an element of the
offense.  Thus, facts that historically have been taken into
account by sentencing judges to access a sentence within a
broad range -- such as drug quantity, role in the offense,
risk of bodily harm -- all must now be charged in an

indictment and submitted to a jury, In re Winship, 397 U.S.
358 (1970), simply because it is the legislature, rather than
the judge, that constrains the extent to which such facts may
be used to impose a sentence within a pre-existing statutory
range." It must be noted that Justice O'Connor included the
reference to IN RE WINSHIP within her comment, not apart from
it; therefore, reminding us that the Constitutional rule of
BLAKELY was actually recognized at least as far back as 1970.

## APPRENDI WAS ADJUDGED RETROACTIVELY APPLICABLE
## AND THOSE COURTS WERE RIGHT.

BLAKELY indicates that the Sixth Circuit had it right
when it interpreted APPRENDI to forbid the imposition of a
mandatory minimum term of incarceration under 21 U.S.C. §
841(b)(1)(A) when the crucial quantity-of-drugs question had
not been submitted to the jury.  See U.S. V. RAMIREZ, 242
F.3d 348 (6th Cir. 2001) and GIBSON V. U.S., 271 F.3d (6th
Cir. 2001).  The Sixth Circuit explained that "[a]ggravating
factors, other than a prior conviction, that increase the
penalty from a nonmandatory minimum sentence to a mandatory
minimum sentence... are now elements of the crime to be
charged and proved.")  Thus, "a defendant may not be exposed
to a greater punishment than authorized by the jury's guilty
verdict." RAMIREZ, 242 F.3d 348, 351-52.  That is precisely
the holding in BLAKELY.

The Ninth Circuit granted permission for Mr. Padilla-
Duran to file a successive petition raising an APPRENDI
error.  The district court, in deciding whether APPRENDI

applies retroactively, looked no further than the text of the
Supreme Court's APPRENDI decision itself.  Quoting the
APPRENDI dissent written by Justice O'Connor, the court found
that APPRENDI, "...will surely be remembered as a watershed
change in constitutional law".  The court also found that
APPRENDI, "imposes as a constitutional rule the principle it
first identified in JONES."  Finding that APPRENDI was a
watershed new rule of constitutional law, the court found
that APPRENDI should be applied on Second or Successive 2255
motions.  See  PADILLA-DURAN V. U.S., Case No. 92 CR 58 (S.D.
CA.); See also U.S. V. WILLIAMS, 01-CV-1012, U.S. V. GREEN,
CR-96-108, and U.S. V. BLY, CR-96-108 (all W.D. OK, 2001).
See also RODGERS V. U.S., 229 F.3d 704, 705-06 & n.1 (8th
Cir. 2000); ASHLEY V. U.S., 266 F.3d 674 (7th Cir. 2001).

    Since BLAKELY, The Government has argued that the
rule of BLAKELY/ APPRENDI fails the standards delineated in
TEAGUE and therefore does not apply to initial Section 2255
petitions.  The problem with this argument is two-fold.
First, Congress modified § 2255 AFTER TEAGUE through the
adoption of the Anti-Terrorism and Effective Death Penalty
Act ("AEDPA") and AEDPA did not codify the TEAGUE approach to
Habeas review wholesale.  See O'BRIEN V. DEBOIS, 145 F.3d 16,
23 (1st Cir. 1998).  The plain language of § 2255 militates
toward the conclusion that AEDPA did not codify, in
particular, TEAGUE'S approach to initial petitions under §
2255.  Instead, the statute's language merely requires that
one condition precedent be met for a petitioner to assert a
right, in his initial petition, within one year of that
right's initial recognition by the Supreme Court.  That

condition precedent is that the newly-recognized right has already been "made" retroactively applicable to cases on collateral review. 28 U.S.C. § 2255. If a newly-recognized right moreover, has been "made retroactively applicable to cases on collateral review," a TEAGUE analysis (which determines retroactivity) is moot.

Petitioner had one year from the BLAKELY decision to assert his rights under the APPRENDI doctrine in this §2255 petition. Now that the BOOKER decision applies BLAKELY to the federal sentencing guidelines, Mr. Ronje has one-year from that decision to apply. He does so here and he did so at sentencing when he objected to the "erroneous" finding that Ronje should be held responsible for "abduction or restraint" of the victim.

Counsel should have raised an APPRENDI-type issue there and post-conviction because IN RE WINSHIP, supra, and the Constitution were available.


OPENING THE FLOODGATES TO "THOUSANDS OF ...PETITIONS"?

The BLAKELY dissent and the Government urge the courts to deny relief because too many will seek it. That is preposterous and unfounded. Perhaps Judge Gadola of the Eastern District of Michigan had it correct when he noticed that, in the first year after APPRENDI had been decided, and "More than half of that year has already transpired. Despite other federal courts' having held that APPRENDI applies retroactively...this Court has received dozens, not thousands or even hundreds, of petitions relating to APPRENDI." Judge Gadola continued: "Respondent [the government] may yet to be

proved correct.  It is possible that, as word of this holding
and others like it spreads among prisoners, the Court will be
inundated with petitions... that is an eventuality that the
Court may have to face.  THE COURT WILL NOT SACRIFICE THE
LAW'S DEMANDS ON THE ALTAR OF EXPEDIENCY."  See JACKSON, 2000
WL 1855102, at *4 n.1 and *7.


    Justice O'Connor, in BLAKELY, noted: "The
consequences of today's decision will be as far reaching as
they are disturbing... Numerous other States have enacted
guidelines systems, as has the Federal Government... Today's
decision casts doubt on them all... Every sentence imposed
under such guidelines in cases currently pending on direct
appeal is in jeopardy.  And, despite the fact that we hold in
SCHIRO V. SUMMERLIN... that RING (and a fortiori APPRENDI)
does not apply retroactively on habeas review, all criminal
sentences imposed under the federal and state guidelines
since APPRENDI was decided in 2000 arguably remain open to
collateral attack." (Schiro's death judgement became final on
direct appeal in 1983, long before APPRENDI).  Justice
O'Connor then asks us to see TEAGUE and quotes from it: "[A]
case announces a new rule if the result was not DICTATED by
precedent existing at the time the defendant's conviction
became final." BLAKELY *4 (emphasis in original).  BOOKER
left no doubt that the Federal Sentencing Guidelines are
likewise vulnerable.  There, Justice Stevens noted that "The
majority's unnecessarily broad remedy sends EVERY federal
sentence back to the drawing board..." adding "[T]he Court's
systematic overhaul turns the entire system on its head IN

17

IN EVERY CASE..." (emphasis added). Steven's dissent in
BOOKER at IV.

In APPRENDI Justice O'Connor noted: "Today, in what
will surely be remembered as a watershed change in
constitutional law, the Court imposes as a constitutional
rule the principle it first identified in Jones." APPRENDI
*31 (citing JONES V. U.S. 526 U.S. 227 (1999)).  Mr.
Apprendi, a white man, had been convicted of firing a weapon
at a house occupied by African-Americans.  At sentencing the
court enhanced his sentence because it found, by a
preponderance of the evidence, that the crime was a hate
crime and racially motivated.  The Supreme Court then made
its now famous holding that such a fact must be made by the
jury or admitted to by the defendant.  Here, the sentencing
court committed a similar error by "finding" such a fact by a
preponderance of the evidence that increases Petitioner's
sentence over Counsel's objections.  Therefore, the error was
not harmless, was preserved, and requires resentencing.


PETITIONER IS ACTUALLY INNOCENT OF THE CRIME
CORRESPONDING TO THE SENTENCE


Anytime a sentencing court enhances the total offense
level she or he has placed the defendant into a new category
and has effectively determined a separate crime.  Thus, a
determination that a person committed a certain crime calls
for a specific sentence; however, if the court determines
that enhancements are proper then the defendant is now guilty

of separate crimes calling for a different sentence. It is
now clear that those sentencing enhancements must be decided
beyond reasonable doubt either by the jury or admitted by the
defendant.

The Supreme Court recognizes a narrow exception to
the general rule that normally a federal court will not
entertain a procedurally defaulted constitutional claim in a
habeas petition absent a showing of cause and prejudice to
excuse the default. In MURRAY V. CARRIER, 477 U.S. 478, 496
(1986), the exception was recognized when the petitioner can
show actual innocence of the substantive offense; and, in the
capital sentencing context, of the aggravating circumstances
[enhancements] rendering the inmate eligible for the death
penalty. SAWYER V. WHITELY, 505 U.S. 333 (1992). The Court
further extended the exception in DRETKE V. HALEY, No. 02-
1824 (May 3, 2004) holding "a federal court faced with
allegations of actual innocence WHETHER OF THE SENTENCE OR OF
THE CRIME CHARGED, must first address all nondefaulted claims
for comparative relief and other grounds for cause to excuse
the procedural default. For those whose sentences became
final before APPRENDI was decided cause can be shown for
failing to have raised the issue due to its unavailability.
For those who failed to raise it later cause can be shown on
a case by case basis. Prejudice, under U.S. V. GLOVER, 531
U.S. 198 (2001) is any amount of time spent in prison more
than the defendant should have been sentenced to absent the
error.

BLAKELY/APPRENDI ARE ACTIONABLE ON COLLATERAL ATTACK

A Petitioner who seeks to put forth an argument
during collateral attack that he failed to raise at trial or
on direct appeal must demonstrate cause for his failure to
make such a contention on direct appeal, and he must prove
that he suffered prejudice from that failure.  See U.S. V.
FRADY, 456 U.S. 152, 167, 102 S.Ct. 1584, 71 L.Ed.2d 816
(1982).  Here, Counsel for Petitioner objected to the
"abduction/restraint of victim determination at sentencing
and failed to file a direct appeal.  APPRENDI, JONES and IN
RE WINSHIP were available but Counsel failed to address them.

BLAKELY HAS BEEN "MADE" RETROACTIVE
BY THE SUPREME COURT.

UNDER TYLER V. CAIN, THE COMBINATION OF SCHIRO V. SUMMERLIN
AND WINSHIP MANDATES APPRENDI'S AND BLAKELY'S
RETROACTIVE APPLICATION.

In TYLER V. CAIN, 533 U.S. 656 (2001) the Supreme
Court held that a new rule of criminal procedure may be made
retroactive through a series of that Court's cases. Justice
Breyer observes that "this Court can make a rule retroactive
over the course of two cases.  We do not disagree that, with
the right combination of holdings, the Court could do this
... Multiple cases can render a new rule retroactive only if
the holdings in those cases necessarily dictate retroactivity
of the new rule."  TYLER, 533 U.S. at 666.  In her

concurrence, Justice O'Connor explained that the Court makes "a new rule retroactive through multiple holdings that logically dictate the retroactivity of the new rule." TYLER, 533 U.S. at 668-69 (O'Connor, J. concurring). In BLAKELY Justice O'Connor conceded that "all cases...since APPRENDI... arguably" are actionable necessarily dictates the retroactivity of APPRENDI, BLAKELY and BOOKER. Logic compels the retroactive application of APPRENDI given the Supreme Court's recognition, in SCHIRO, that the APPRENDI rule implicates fundamental fairness, and, in the host of Supreme Court decisions, of the heightened accuracy afforded by the criminal law's standard of proof beyond a reasonable doubt.

Now we must look at a series of cases that apply to consideration of BLAKELY. In the plurality decision in TEAGUE V. LANE, 489 U.S. 288 (1989), the Supreme Court announced that new procedural rules of constitutional law would generally not be applied retroactively to cases on collateral review. That decision has since been applied by the majority of the Court. See e.g. PENRY V. LYNAUGH, 492 U.S. 302 (1989). TEAGUE adopts exceptions to the general principal that new rules of constitutional procedure not apply retroactively. For BLAKELY purposes the import exception is for rules that impact the fundamental-fairness of the underlying proceeding; and the accuracy of that underlying criminal proceeding. SAFFLE V. PARKS, 494 U.S. 495 (1990).

Therefore, we must first decide whether the rule announced in BLAKELY is one of fundamental fairness. BLAKELY holds that there is a Sixth Amendment right to a trial by

jury for sentencing factors.  In SCHIRO V. SUMMERLIN, No. 03526, 2004 WL 1402732, at *57 (June 24, 2004), a five-justice majority concluded that the decision in RING V. ARIZONA, 536 U.S. 610 (2002), applying APPRENDI to Arizona's capital sentencing scheme, does not apply retroactively under TEAGUE.  The Court specifically found that the right to jury trial and findings beyond a reasonable doubt for sentencing enhancements, does not violate the concept of fundamental fairness.  The Court also found that under the Arizona sentencing scheme, the judge made findings regarding sentencing enhancements by a beyond reasonable doubt standard.  The Court found that while Schiro met the first part of the TEAGUE test, he could not meet the second as there was not a fundamental difference in accuracy between judicial findings beyond reasonable doubt and jury findings beyond reasonable doubt.

In the final analysis, the Court reiterated that the "RIGHT TO A JURY TRIAL IS FUNDAMENTAL TO OUR SYSTEM OF CRIMINAL PROCEDURE," but held that the RING rule should not apply retroactively because it does not seriously enhance accuracy.  Id. at *6-7. (emphasis added).  The four dissenting judges noted various reasons why jury findings are superior.  SCHIRO, 2004 WL 140273 at *9-12 (Breyer, J., dissenting).

Therefore, the rule announced in BLAKELY is "FUNDAMENTAL" and meets the first criteria of the TEAGUE test.  The Supreme Court Justices agree that jury findings beyond a reasonable doubt are much more accurate than judicial findings by a preponderance of the evidence.

Therefore, BLAKELY, based on TEAGUE, SCHIRO, JONES, APPRENDI, WINSHIP AND THE CONSTITUTION must be retroactive at this time especially for those who raised a proper objection at trial or on Direct.

The SCHIRO Court's conclusion that RING should not apply retroactively does not apply here, where the lower standard of proof undermines the accuracy of the proceedings' outcome, because the determination at issue in RING was made under the beyond reasonable doubt standard.

## THE LANGUAGE OF §2255 ALLOWS THIS COURT TO DECIDE
## THE RETROACTIVITY ISSUE

This Court may rule that BLAKELY applies retroactively as per U.S. V. SWINTON, 333 F.3d 481, 486 (3d Cir. 2003)(the "language of ¶6(3) [of Section 2255] belies the conclusion that only the Supreme Court could decide retroactivity. As numerous courts have noted, if Congress intended that result, then it would have utilized the same language it used in §2255 ¶8(2)") (permitting a district court or circuit court to make the decision "that the statute of limitations provision of §2255 allows district courts and courts of appeals to make retroactivity decisions" and may be essential to put the question before this Court.) Id.

Similarly, in GRAHAM V. COLLINS, 506 U.S. 461, 468 (1993)) the Supreme Court recognized and conformed to the holding in TEAGUE, supra, when it was held that the Supreme Court need not make the specific finding that a new rule was retroactive if the ruling dealt with these types of

procedural constitutional violations... that by the nature of the wrong, the new rule was "a watershed rule of criminal procedure." That is what we have here: multiple decisions of a "watershed" holding that "logically dictate" retroactivity.

In SULLIVAN V. LOUISIANA, supra, the Court held that the statutory language "made retroactive" leaves room for retroactive application despite the absence of a specific pronouncement that it is held retroactive." The Supreme Court case of RIVERS V. ROADWAY EXPRESS, 114 S.Ct. 1510 (1994) involved the retroactive application of a judicial interpretation of an existing statute. The Court held that "it is the Court's responsibility to say what a statute means, and once the court has spoken, it is the duty of the courts to respect the understanding of the governing rule of law. A judicial construction of a statute is authoritive of what the statute meant before, as well as after, the decision of the case giving rise to the construction." Id. at 1519.

Justice Thomas, in his dissent to Justice Breyer's opinion in BOOKER, noted that the Sentencing Commission believed that the preponderance standard applied and said: "The Court's holding today corrects that mistaken belief." The error in this case affected the structural framework of the trial process in violation of the Fifth Amendment's Due Process Clause as well as the Sixth Amendment's jury trial guarantee when the sentencing judge decided facts by a preponderance of the evidence that set the base offense level and enhanced the sentence based upon facts decided by the same standard. According to APPRENDI and BLAKELY, those facts should have been decided beyond reasonable doubt.

CONCLUSION

All Americans grew up standing next to their school desks reciting the Pledge of Allegiance: "I pledge allegiance to the flag... and to the Republic for which it stands... with liberty and justice for all." All judges of this Nation take an oath of office that mandates that they uphold the Constitution. All Americans and all those charged with crimes in this Nation are equally protected by the Constitution and established laws. As the Supreme Court noted: "It is... important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty." WINSHIP, 397 U.S. at 394.

Accordingly, Petitioner has been sentenced based on findings by a preponderance of the evidence and this Court is without jurisdiction to deny Petitioner the relief he seeks, or at least review on the merits, unless the United States is no longer a Democratic Republic, the Constitution is no longer a controlling and respected document and ideologies of the likes of Joseph Stalin, Saddam Hussein, Osama bin Laden, al-Qaeda, and the Taliban have effectively taken over the courts, this country, and its justice system.

At the time Mr. Ronje was sentenced, the Court was obligated to follow the U.S. Sentencing Guidelines. Now, after BOOKER, that direction was unconstitutional and the Court should not have been so obligated. If the Court had

25

not been so obligated, it may not have added the two level
enhancement especially in view of the information provided
herein.  Afterall, Mr, Ronje passed an FBI expert's polygraph
examination finding that he (1) did not know the stabbing
victim; (2) that he did not witness the murder; (3) that he
arrived at the end of the criminal venture; and (4) that he
was not envolved in any degree of planning or prepartion for
the killing of the victim.

Mr. Ronje's plea agreement stated that he waived the
right to appeal the sentence so he would have been barred had
he tried.  However, it also stated that "the Defendant may
appeal only  "the sentence imposed above the statutory
maximum..."  Clearly, BLAKELY reveals that the "statutory
maximum" is the maximum sentence a judge may impose solely on
the basis of the facts reflected in the jury verdict or
admitted by the defendant."  BLAKELY at *4.

Further, the Fifth Circuit has held that an
enhancement for "physical restraint" must be overturned if,
as in the case at bar, the defendant had not, as the USSG
defines the term: "tied, bound or locked up" the victim
physically.  See U.S. V. HICKMAN, 151 F.3d 446, 461 (5th Cir.
1998)(collecting cases).

For the reasons enumerated above, BLAKELY and
APPRENDI apply to the case at bar based on their relationship
to WINSHIP as well as numerous precedents and the history of
the Fifth and Sixth Amendments.  They are not new rules, but,
if they were, then they are rules of substantive law and of
"watershed" importance; either way they apply retroactively
on collateral review as the error infected the entire trial

*26*

process and leaves the result in doubt.

Accordingly, Ronje's sentence is unconstitutional based on an enhancement not found beyond reasonable doubt; the error is also plain and seriously affects the fairness, integrity and public reputation of judicial proceedings as well as Petitioner's substantial rights; therefore, the error is far from harmless and Mr. Ronje must be resentenced solely according to his plea without the two-point enhancement.

Respectfully submitted under penalty of perjury this Thirtieth day of March in the year 2005.

Petitioner's signature: _Mike Ronje_
_2-4-05_

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing MOTION TO CORRECT SENTENCE PURSUANT TO 28 U.S.C. §2255 was mailed, first class postage pre-paid, to the Office of the U.S. Attorney, A.U.S.A. Mark Patterson, 800 North Shoreline, Suite 500, One Shoreline Plaza, Corpus Christi, TX 78410 on the Thirtieth day of March, 2005.

Petitioner's signature: _Mike Ronje_
_2-4-05_



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

# MEMORANDUM

**DATE:**      April 6, 2005

**TO:**        Dana Rodriguez

**FROM:**      Angel Mireles

**SUBJECT:**   CR No. 03-159-5;  USA V.  MICHAEL RONJE

---

**INFORMATION PROVIDED BY CRIMINAL CLERK:**

**MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY has been filed as of April 4, 2005.**

**The criminal case number associated with this motion is 03-159-5.  The presiding judge in the criminal case is Judge Janis Graham Jack.**

**INFORMATION PROVIDED BY CIVIL CLERK:**

**THE CIVIL ACTION NUMBER ASSIGNED TO THIS CASE:** C - 0 5 - 1 6 5

**DIRECT JUDGE ASSIGNMENT TO:** HONORABLE JANIS GRAHAM JACK

APR  8  2005